IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

MIGUEL BEDOLLA-ZARCO,

    Petitioner/Defendant,

v.                                                         Case No. 2:14-cr-200(7)
                                                             Case No. 2:16-cv-564

UNITED STATES OF AMERICA,          JUDGE ALGENON L. MARBLEY
                                                             Magistrate Judge Kemp

    Respondent/Plaintiff.

**REPORT AND RECOMMENDATION**

Petitioner, Miguel Bedolla-Zarco, acting *pro se*, has filed a motion to vacate or set aside his sentence pursuant to 28 U.S.C. §2255. This case is before the Court on the motion (Doc. 846), the United States' response (Doc. 858), and Petitioner's reply (Doc. 882). For the foregoing reasons, it will be recommended that the motion to vacate be **DENIED**.

**I. Factual and Procedural History**

On September 18, 2014, a Grand Jury returned a six-count indictment charging Petitioner and 28 other individuals with drug-related offenses. That was followed by a 15-count superseding indictment returned on April 2, 2015. Count 2 of that indictment charged Petitioner with conspiracy to distribute and to possess with intent to distribute methamphetamine between January 1, 2011 and September 23, 2014, in violation of 21 U.S.C. §§846, 841(a)(1) and (b)(1)(C). (Doc. 398). On November 19, 2015, Petitioner

entered a guilty plea to that charge. (Doc. 653). Following a sentencing hearing, Petitioner was sentenced to 58 months' incarceration and three years of supervised release. (Doc. 795, 798). Petitioner did not appeal.

On June 21, 2016, Petitioner filed this motion to vacate pursuant to 28 U.S.C. §2255. He raises three grounds for relief, two of which assert ineffective assistance of counsel, and one of which claims that he was sentenced in violation of *Johnson v. United States*, - - -U.S. - - -, 135 S.Ct 2551 (2015). Each claim will be set forth in detail in the following sections of this Report and Recommendation. Respondent argues that none of these claims has merit.

## II. Discussion

### A. Grounds One and Two- Ineffective Assistance of Counsel

Petitioner raises two separate ineffective assistance of counsel grounds for relief, asserting that counsel was constitutionally ineffective at both the pretrial/plea negotiation and sentencing phases of the proceedings.

The right to counsel guaranteed by the Sixth Amendment is the right to effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n. 14 (1970). The standard for reviewing a claim of ineffective assistance of counsel is twofold:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir. 1987). "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689.

To establish prejudice, it must be shown that there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different. *Id*. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id*. at 697. Because petitioner must satisfy both prongs of the *Strickland* test to demonstrate ineffective assistance of counsel, if the Court determines that petitioner has failed to satisfy one prong, it need not consider the other. *Id*. at 697.

In his first ground for relief, Petitioner asserts that his counsel was ineffective during the pretrial and plea negotiation stage of his case because:

- He did not stress Petitioner's minor role in the conspiracy, which was only a single phone call and message left on voice mail.

- He did not assist Petitioner to the best of his ability because he did not attempt to negotiate with the Assistant United States Attorney ("AUSA").

- He was "unprofessional, unethical and demonstrated an obvious lack of interest in his case."

- He did not make any arguments on Petitioner's behalf at sentencing, and said "do whatever you guys [the Court] decide to do."

- He failed to help Petitioner, and therefore Petitioner was sentenced to 58 months rather than 50 months as recommended by the AUSA.

Respondent asserts that counsel was not ineffective in the plea negotiation stage because there was no prejudice to Petitioner, and Petitioner does not argue that he would not have accepted the plea deal if his counsel had not been deficient. Rather, Petitioner claims that counsel was ineffective for failing to raise certain arguments, negotiate more vigorously on his behalf, and show interest in his case. Respondent states that those arguments "speak only to Petitioner's displeasure with the quality of the plea deal and its terms, not that Petitioner would have refused a plea deal if his counsel was more engaged." (Doc. 858, p. 5). Petitioner also asserts in his first claim that the Government recommended his sentence to be 50 months, which is unsupported by the record and contrary to the Government's motion pursuant to U.S.S.G. §5K1.1, in which it recommended 58 months. (Doc. 846, ¶8; Doc. 793).

In his reply brief, Petitioner asserts that he would have rejected the plea deal if counsel had been effective. He claims that counsel told him that he would only be subject to a 36 month term of imprisonment if he accepted the proffered plea deal. Petitioner's position is completely belied by the plea agreement which Petitioner entered into with the Government. Specifically, he agreed and understood that notwithstanding the plea agreement, the Court had authority to impose any custodial sentence within the statutory maximum term of 20 years, and that there had been no other promises or agreements in place relative to his prospective sentence. (Doc. 605, ¶¶11, 14). Petitioner would have the Court to now believe his claims, not given under

4

oath, which contradict his plea agreement and sworn testimony at his plea colloquy. (Doc. 653). As the Supreme Court has noted:

> [[T]he representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations made in open court carry a strong presumption of verity.

*Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). Thus, Petitioner's plea agreement and plea colloquy "definitively rebuts [his] claim that he relied upon legal advice from his counsel that he would be entitled to a. . . reduction of sentence." *United States v. Thornton*, 2008 WL 203405, *2 (S.D. Ohio Jan. 22, 2008). Petitioner's first claim for relief is without merit.

Petitioner's second argument in support of relief asserts that his counsel was ineffective at the sentencing phase of the proceedings. He argues that his counsel failed to raise to the Court the following information, which he claims would have assisted him in obtaining a lighter sentence:

- Co-defendant Carlos Carrasco cooperated and lied to the DEA about working for Petitioner. This resulted in his being determined to be a mid-level drug dealer, when in actuality Petitioner delivered the drugs to Mr. Carrasco on behalf of co-defendant Felipe Rodriguez, but only on four occasions.

- Alejandrina Garcia, the girlfriend of Felipe Rodriguez, used to deliver the drugs to Petitioner on behalf of Mr. Rodriguez, and then Petitioner would deliver the drugs to Mr. Carraso.

- Felipe Rodriguez was the supplier of the drugs who paid Petitioner after deliveries.

- Co-defendant Ruben Quiros used to buy drugs from Mr. Carrasco.

5

- Petitioner's cooperation in the criminal case led to other arrests.

Petitioner argues that his counsel's failure to use such information to negotiate his sentence resulted in his being sentenced to 58 months, whereas Mr. Carrasco and Ms. Garcia were only sentenced to 12 and 36 months, respectively, despite Petitioner's having played a less significant role in the crimes.

Respondent asserts that Petitioner's counsel was not ineffective at sentencing because the sentence was low enough that there is no reasonable probability that the outcome would have been different had counsel raised all of Petitioner's arguments. If counsel has been ineffective, prejudice to the defense must be shown to demonstrate that but for counsel's shortcomings, there is a reasonable probability that the result of the proceedings would have been different. *Wiggins v. Smith*, 539 U.S. 510, 534 (2003). Moreover, *Strickland* does not require counsel representing a criminal defendant to present all possible means of mitigating evidence at sentencing. *Wiggins*, 539 U.S. at 533. Counsel's performance need not be flawless, and he must have the ability to exercise reasonable professional judgment with respect to strategic choices. *Id*.

Petitioner also argued that counsel did not inform him that he would receive a two-point enhancement for a gun which he "never possessed," presumably referring to his most recent state conviction. (Doc. 882, p. 3). He appears to argue that his counsel never informed him about a firearm enhancement, but he was not subjected to a firearm enhancement at sentencing. Petitioner had a one-point Guideline enhancement for his

2008 OVI conviction, which on its own would have placed him at a Criminal History Category I. The additional two-point enhancement was because he had a second prior conviction in 2014, for improper handling of a firearm in a motor vehicle, resulting in a sentence of at least sixty days. PSR, ¶74; U.S.S.G. §4B1.1(b). Contrary to Petitioner's implications, this enhancement had nothing to do with a firearm being involved, and would not have increased his sentence from a possible 36 months to 58 months. The previous convictions meant that Petitioner was assigned a total of three points towards his Criminal History Category, which resulted in his Criminal History Category being II rather than I. Had Petitioner been a Category I, based on his offense level of 26, the Guideline range would have been 63-78 months, rather than 70-87 months. U.S.S.G. Sentencing Table.

The Probation Officer's Presentence Report recommended a custodial sentence of 70 months, the lowest amount of time within Petitioner's recommended Guideline range. (PSR, ¶106). Petitioner argues that "counsel failed to request and/or object to the Government's failure to file a [U.S.S.G. §]5k1.1 motion during the course of Petitioner's sentencing." (Doc. 882, p. 4). However, the docket reflects that a motion for reduction in sentence was filed by the Government on March 22, 2016, the day of Petitioner's sentencing hearing, requesting a downward departure for his substantial assistance. (Doc. 793). A sentencing memorandum was also filed on his behalf by his counsel urging a reduction in the recommended sentence, specifically referencing Petitioner's minor role in the conspiracy and relatively light sentences received by some of his co-

7

defendants. (Doc. 787). Virtually all the factors that Petitioner argues should have been raised on his behalf during sentencing are contained in these documents.

Indeed, Petitioner was granted a downward departure as requested in the Government's 5K1.1 motion, to 58 months, as opposed to the 70 months recommended by the Probation Officer. For these reasons, the Court agrees with Respondent that Petitioner can establish neither defective performance by his counsel nor prejudice against him during either the plea negotiations or sentencing phases of his case. Petitioner's ineffective assistance of counsel claims are without merit.

### B. Sentencing Reduction based on *Johnson v. United States*

Petitioner was arrested on state charges on June 30, 2014 for felony assault with a firearm against a police officer, discharging a firearm within city limits, and improper handling of a firearm in a vehicle. (Doc. 846, ¶13). Following a trial, a jury found Petitioner not guilty for the felony assault with a firearm and discharging a firearm within city limits, but guilty of the improper handling of a firearm charge. He was sentenced to one year imprisonment. Id. at ¶14. Petitioner was detained by the US Marshals' Service due to being indicted in this case, and at his sentencing in this case he received an enhancement of two points towards his Criminal History category based on that conviction. Id. at ¶15.

In *Johnson*, the United States Supreme Court held that the "residual clause" of 18 U.S.C. § 924(e)(2)(B)(ii), the Armed Career Criminal Act ("ACCA"), was unconstitutionally vague. Under the ACCA, a criminal defendant who is found guilty

8

of possessing a firearm after having been convicted on three or more convictions of a "serious drug offense" or a "violent felony" is subject to a mandatory minimum sentence of 15 years and a maximum term of life in prison. 18 U.S.C. § 924(e)(1). The ACCA defines the term "violent felony" as follows:

> (B) the term "violent felony" means any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that—
>
>> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>>
>> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of *physical injury to another*[.]

18 U.S.C. § 924(e)(2) (Emphasis added). The italicized portion of subsection (ii) is known as the "residual clause," and it is the section of the statute that *Johnson* found to be unconstitutionally vague. On April 18, 2016, the Supreme Court held that *Johnson* is retroactive, which prompted the Federal Bureau of Prisons to issue a notice to inmates that prisoners who believed they were entitled to relief under *Johnson* had until June 26, 2016, to file a motion to vacate. ¶¶17-19. Petitioner believes that he is entitled to a sentence reduction based on the *Johnson* decision because his sentencing guidelines range was increased based on "an identical provision in the Sentencing Guidelines that is also void." (Doc. 846, ¶ 20). *See In re Watkins*, 810 F.3d 376 (6th Cir. 2015).

Respondent argues that Petitioner is not entitled to relief under *Johnson* because his two-point enhancement to his sentence was not based on any sort of residual clause. Specifically, Petitioner's two-point enhancement was based on a guideline for a two-point enhancement for any prior conviction resulting in a sentence of at least sixty days. PSR, ¶74; U.S.S.G. §4B1.1(b). Petitioner concedes that his two-point enhancement was not imposed under the residual clause of the applicable section of the Guidelines. However, he suggests in his motion that the Court should await a pending Supreme Court case which would resolve the question of whether *Johnson* is applicable to his case. There is no credible argument that *Johnson* applies to the type of enhancement made in this case. Further, the case to which Petitioner refers- *Beckles v. United States,--- U.S. - - -,* 137 S.Ct. 886 (2017), to the extent that is has any applicability here, determined that the residual clause in the Guidelines is not void for vagueness. Petitioner's third claim is completely without merit.

### III. Recommendation

For the foregoing reasons, it is recommended that Petitioner's motion to vacate pursuant to 28 U.S.C. §2255 be DENIED and this case be DISMISSED.

### IV. Procedure on Objections

If any party objects to ther Report and Recommendation, that party may, within fourteen days of the date of ther Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of ther Court shall

make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of ther Court may accept, reject, or modify , in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit ther matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

/s/ Terence P. Kemp
United States Magistrate Judge